UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

SIAMAK MESHKOOTY,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

No. 1:26-CV-179-H

**ORDER**

Eleven months ago, U.S. Immigration and Customs Enforcement detained Siamak Meshkooty, an Iranian citizen, to facilitate his removal. Dkt. No. 8-1 at 2, 4. Because Meshkooty was granted deferral of removal as to Iran under the Convention Against Torture (CAT), the agency began to explore options for third-country removal. *See* Dkt. No. 1 at 10–12. But there has been little progress since. Meanwhile, Meshkooty has remained in continuous custody at the Bluebonnet Detention Center.

Before the Court is Meshkooty's petition for a writ of habeas corpus (Dkt. No. 1). After considering the parties' arguments and the applicable law, the Court concludes that Meshkooty has shown "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The respondents, for their part, concede that they cannot rebut this showing. Dkt. No. 11 at 3; *Zadvydas*, 533 U.S. at 701 ("[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."). Accordingly, the petition (Dkt. No. 1) is granted. The respondents are ordered to release Meshkooty on an Order of Supervision within 24 hours of this Order. *See* 8 U.S.C. § 1231(a)(3).

**1. Background**

Meshkooty was lawfully admitted into the United States on a visa in February 2012. Dkt. No. 8-1 at 3. In September 2012, he was served a Notice to Appear charging him as removable for overstaying his visa. *Id.* In both 2016 and 2017, Meshkooty was arrested for assaulting a family member. *Id.* at 3–4. He was convicted following the second arrest and sentenced to seven years' probation. *Id.*

Meshkooty was ordered removed in absentia after he failed to appear for a scheduled immigration-court hearing. *Id.* at 4. He was later granted withholding of removal to Iran under CAT, and his order of removal became administratively final in October 2018. *Id.* When it became clear, however, that Meshkooty could not be removed to Iran, ICE released him on an Order of Supervision in January 2019. *Id.* For the following six years, Meshkooty complied with these conditions. Dkt. No. 1 at 4.

On October 10, 2025, ICE again took Meshkooty into custody to effectuate his removal from the United States. Dkt. No. 8-1 at 4. Meshkooty remained detained while ICE arranged for his removal to a third country pursuant to 8 U.S.C. § 1231(a)(2) because he is subject to a final order of removal from the United States. *Id.* at 3. Meshkooty has been in ICE custody since that date and is currently detained in the Bluebonnet Detention Facility. *Id.* at 4.

On April 15, Meshkooty filed a petition for a writ of habeas corpus alleging that his continued detention violates the presumptively reasonable six-month post-removal order detention period established by the Supreme Court in *Zadvydas*. 533 U.S. 678 (2001). Dkt. No. 1 at 5. He also alleges that his detention beyond this period violates the Fifth

Amendment's Due Process Clause. *Id.* at 14–15. In his petition, Meshkooty asks the Court to order his immediate release. *Id.* at 5, 15.

On May 11, the Court directed the respondents to show cause why Meshkooty's petition should not be granted. Dkt. No. 4. In their initial response, the respondents stated that "[d]espite documented efforts on the part of [r]espondents[,] the removal of Petitioner has not been effected, and it does not appear that the continuation of those efforts at this time will be effective in bringing about the soon removal of Petitioner in accordance with the order of removal and applicable law." Dkt. No. 8 at 2. Respondents could not provide the Court "with a clear assessment of the likelihood of removal in the reasonably foreseeable future." *Id.*

In his reply, Meshkooty notes that respondents did not assert that Meshkooty's removal was imminent, that a travel document was forthcoming, or that there was any progress with any third country willing to accept Meshkooty. Dkt. No. 9 at 2–3.

Despite the respondents' stated position, the Court noted in a prior order that an attached affidavit of an ICE deportation officer had stated that "ICE is currently seeking to remove Meshkooty to an available [third] country." Dkt. No. 10 (quoting Dkt. No. 8-1 ¶ 17). The respondents did not explain the steps they had taken or were going to take to facilitate Meshkooty's removal to a third country. Dkt. No. 10 at 1. Thus, the Court ordered the respondents to file a response detailing these efforts. *Id.* at 2.

In their supplemental response, the respondents outlined that "[n]o information has been received from the [Removals and International Operations (RIO)] unit to change the earlier observation that the local Enforcement and Removal Operations (ERO) unit officer 'is unable to make a determination on [significant likelihood of removal in the reasonably

foreseeable future (SLRRFF)] due to current guidance on potential third country removals.'" Dkt. No. 11 at 2 (quoting Dkt. No. 8-1 at ¶ 18). Respondents then state they are unable to provide the court "with a clear assessment of the likelihood of removal in the reasonably foreseeable future." *Id.* at 3.

Meshkooty replied to the respondents' supplemental response by re-urging his position that the respondents had "largely conceded the *Zadvydas* argument, i.e. that there is no significant likelihood of his removal in the reasonably foreseeable future." Dkt. No. 12 at 3.

The Court has not received any further updates from the respondents regarding a change in Meshkooty's likelihood of removal in the reasonably foreseeable future. As of today, Meshkooty has been in ICE detention for 335 days.

**2. Legal Standards**

**A. Writ of Habeas Corpus**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas*, 533 U.S. at 687–88. Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Immigration Detention Under 8 U.S.C. § 1231

Ordinarily, the government must remove an alien within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). During this "removal period," the government "shall detain the alien." *Id.* § 1231(a)(2)(A). If the alien does not leave the country or is not removed within the removal period, the alien is "subject to supervision." *Id.* § 1231(a)(3). But under Section 1231(a)(6), the government "may" continue to detain certain aliens beyond the removal period if they are (1) inadmissible, (2) removable because of certain violations, or (3) a risk to the community or unlikely to comply with the removal order.

By its terms, Section 1231(a)(6) does not impose any time limit on an alien's post-removal-period detention. Faced with "constitutional concerns" about indefinite detention, however, the Supreme Court in *Zadvydas* addressed how long the government may detain an alien under Section 1231(a)(6) while his removal is pending. 533 U.S. at 682. The *Zadvydas* petitioners—two resident aliens with criminal histories—were detained under Section 1231 after receiving final removal orders. *See id.* at 684–86. The government continued to detain both petitioners past the 90-day removal period. *Id.* Each petitioner filed a habeas petition claiming that his continued detention violated due process. *Id.*

The Supreme Court first noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. To avoid this problem, the *Zadvydas* Court construed Section 1231(a)(6) to permit detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699, and the alien is "eligible for conditional release" on an Order of Supervision. *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Courts measure reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. They must also consider the Executive Branch's immigration expertise, "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce Section 1231, and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized in *Zadvydas* a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once the alien has satisfied his burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Accordingly, while not every non-removed alien must be released after six months, the parties' relative burdens may change as the duration of an alien's post-removal-period detention stretches on. *See id.*

**3. Analysis**

Meshkooty has been in ICE detention for 335 days—far longer than *Zadvydas*'s presumptively reasonable six-month period. *See* 533 U.S. at 700–01. The first question, then, is whether Meshkooty has met his initial burden: Is there "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"? *Id.* The

answer is yes. Meshkooty's granted deferral of removal under CAT as to Iran,[1] combined with the government's admission that it cannot provide "a clear assessment of the likelihood of removal in the reasonably foreseeable future," indicate that there is no significant likelihood of removal anytime soon. Dkt. No. 11 at 3.

### A. Meshkooty has shown that there is no significant likelihood of removal in the reasonably foreseeable future.

To carry his initial burden, Meshkooty "must present something beyond speculation and conjecture." *Idowu v. Ridge*, No. 3:03-CV-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003). More specifically, Meshkooty "must demonstrate that 'the circumstances of his status' or the existence of 'particular individual barriers to his repatriation' to [Iran] are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The mere "lack of visible progress" in the removal process is not enough. *Id.* To shift the burden to the respondents, Meshkooty must make a non-conclusory showing that "ICE is incapable of executing his removal in the near future." *Nagib v. Gonzales*, No. 3:06-CV-294, 2006 WL 1499682, at *3 (N.D. Tex. May 31, 2006), *report and recommendation adopted in relevant part*, 2006 WL 1499682, at *1.

Here, there is nothing conclusory about Meshkooty's argument. As far as the Court is aware, Iran is the only country for which Meshkooty has any claim to citizenship. *See* Dkt. No. 1 at 4. Yet, Meshkooty obtained a deferral of removal under CAT as to Iran from an Immigration Judge in October 2018. *See* Dkt. No. 8-1 at 4. With no foreseeable avenue for repatriation to Iran, Meshkooty has identified "particular individual barriers" preventing

[1] The Court has received no notice of termination of the deferral of removal as to Meshkooty and treats the initial deferral of removal as applicable for purposes of this order. *See* 8 C.F.R. § 1208.17.

his removal in the reasonably foreseeable future. *Idowu*, 2003 WL 21805198, at *4 (quotation omitted).

And although the respondents may seek to facilitate third-country removal, thus far they have made little progress in doing so. All they have to show for the last 47 weeks is a request that the State Department begin looking for a country that will accept Meshkooty. *See* Dkt. No. 11-1 at 3. And as of late July, "[n]o information has been received from the RIO unit to change the earlier observation that the local Enforcement and Removal Operations (ERO) unit officer 'is unable to make a determination on SLRRFF due to current guidance on potential third country removals.'" Dkt. No. 11 at 2. All the while, the duration of Meshkooty's post-removal-period detention continues to grow. Now, almost eleven months after his re-detention, there is little evidence he will foreseeably be removed anywhere.

While the Court recognizes the importance of deferring to the Executive Branch on immigration matters, deference has its limits. *See Surovtsev v. Noem*, 2025 WL 3264479, at *7 ("[T]he government cannot succeed merely by showing it has made 'good faith efforts' for which the outcome is not 'impossible.'" (quoting *Zadvydas*, 533 U.S. at 702)). The Supreme Court made clear that, no matter the deference typically accorded to the government on sensitive issues of foreign policy, courts cannot "abdicat[e] their legal responsibility to review the lawfulness of an alien's continued detention." *Zadvydas*, 533 U.S. at 700. On the record in this case, Meshkooty has carried his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See id.* at 700–01.

### B. On rebuttal, the respondents fail to meet their burden under *Zadvydas*.

That leaves the final question: Have the respondents offered evidence sufficient to rebut Meshkooty's showing? By the respondents' own admission, they have not. In their response to the Court's order requesting details of their third-country removal efforts (Dkt. No. 10), the respondents candidly acknowledged that they are "not able to provide the Court" with "a clear assessment of the likelihood of removal in the reasonably foreseeable future." Dkt. No. 11 at 3. Put simply, the respondents have "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months." *Clark*, 543 U.S. at 386. More is required to justify Meshkooty's continued detention.[2] Therefore, he must be released.

## 4. Conclusion

In sum, Meshkooty has shown "good reason to believe that there is no significant likelihood of removal" to Iran or any other country "in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. And the respondents concede that they cannot provide the Court with a "clear assessment" to rebut that showing. Dkt. No. 11 at 3. Therefore, under *Zadvydas*, Meshkooty is entitled to release on supervision. His petition for a writ of habeas corpus (Dkt. No. 1) is granted.

The respondents are ordered to release Meshkooty from the Bluebonnet Detention Center on an Order of Supervision within 24 hours of this Order.[3] *See* 8 U.S.C. § 1231(a)(3).

---

[2] Because the Court finds that Meshkooty's continued detention violates Section 1231(a)(6), it need not address Meshkooty's potentially distinct argument that the respondents are detaining him in violation of the Due Process Clause of the Fifth Amendment. *See* Dkt. No. 1 ¶¶ 37–40.

[3] Pursuant to such an Order of Supervision, the government can track Meshkooty's whereabouts and revoke his release on supervision if it finds a country willing to accept him. *See* 8 C.F.R. § 241.4(*l*)(2)(iii).

Upon his release, the respondents are further ordered to file a written notice on the docket notifying the parties and the Court.

So ordered on September 10, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE